UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK X. HASSELBECK,

                Plaintiff,

        -vs-                                            04-CV-0376C

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

      Plaintiff Mark X. Hasselbeck initiated this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") denying his application for Social Security disability insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits. The Commissioner has filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. 12(c), and plaintiff has filed a cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the following reasons, the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

      Plaintiff was born on October 25, 1954 (T.112).[1] He applied for SSI and disability insurance benefits on June 5, 1995, with an alleged disability onset date of December 31, 1993 (T. 112-15; 151-54). The plaintiff alleges disability due to hepatitis C, liver damage (cirrhosis), and polysubstance abuse. Plaintiff's application was denied initially on

---

[1] References preceded by "T." are to page numbers of the transcript of the administrative record, filed by defendant as part of the answer to the complaint.

August 18, 1995 (T. 116-19; 158-61) and then denied upon reconsideration (T. 122, 147, 164-67).  Plaintiff requested an administrative hearing, which was held on September 23, 1996 before Administrative Law Judge ("ALJ") Charles J. Fiorella.[2]  On September 27, 1996, the ALJ determined that the plaintiff was not disabled and not entitled to disability insurance and SSI benefits (T. 317-25).

Plaintiff sought Appeals Council review of the ALJ's decision, and on August 7, 1998, the Appeals Council granted review, vacated the September 27, 1996 hearing decision, and remanded the case for further proceedings (T. 345-47).  On November 23, 1998, a hearing was held before ALJ Nancy Lee Gregg (T. 40-82).  Plaintiff testified and was represented by counsel at the hearing.  At the hearing, plaintiff amended the alleged onset date to October 1, 1995 (T. 48).  A supplemental hearing was held on August 23, 1999, at which time the ALJ heard vocational expert testimony and further testimony from plaintiff (T. 83-107).

On December 9, 1999 the ALJ determined that the plaintiff was not disabled and not entitled to disability insurance and SSI benefits (T. 15-37).  The ALJ's decision became the Commissioner's final determination on March 26, 2004, when the Appeals Council denied plaintiff's request for review (T. 8-11).  On May 14, 2004, plaintiff instituted this action seeking judicial review of the Commissioner's final determination (Item 1).  On November 16, 2004, the Commissioner moved for judgment on the pleadings seeking an order affirming the ALJ's decision (Item 6).  In response, the plaintiff filed a cross motion

---

[2] The transcript of this hearing is not in the administrative record.

for judgment on the pleadings on December 10, 2004 on the grounds that the decision is not supported by substantial evidence (Item 9).

## DISCUSSION

### I.   Scope of Judicial Review

The Social Security Act states that upon district court review of the Commissioner's decision, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401.  The court's inquiry is "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner."  *Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards."  *Gartmann v. Sec'y of Health & Human Servs.*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986) (quoting *Klofta v. Mathews*, 418 F.Supp. 1139, 1411 (E.D.Wis. 1976)).  The Commissioner's determination cannot be upheld when it is based on an

erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

II.     **Standard for Determining Eligibility for Disability Benefits**

The regulations set forth a five-step process for the ALJ to follow in evaluating disability and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in the 20 C.F.R. § 404, Subpart P, Appendix I (the "Listings"). If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity, based on a series of charts provided in the regulations at 20 C.F.R. § 404, Subpart P, Appendix 2 (the "Grids"). *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his amended alleged disability onset date of October 1, 1995 (T. 32). In reviewing plaintiff's medical records, the ALJ noted that the plaintiff suffers from hepatitis C with cirrhosis of the liver, thrombocytopenia, hypersplenism, and a polysubstance abuse disorder (T. 32). Although the plaintiff's impairments were "severe," the ALJ found that none of the impairments, individually or in combination, meets or equals the requirements of the Listings (T. 24).

Proceeding to the fourth step of the sequential evaluation process, the ALJ determined that prior to April 24, 1999, plaintiff did not have the residual functional capacity to perform his past relevant work as a bartender, warehouseman, or real estate agent (T. 32). The ALJ then evaluated the claimant's ability to perform other work as specified by the fifth step of the sequential evaluation process. Relying on the testimony of a vocational expert and medical evidence, the ALJ concluded that plaintiff had the capacity to perform sedentary work and, considering his age, education, and past relevant work experience, could have performed other work existing in the national economy, specifically, work as a microfilm document preparer, telephone answering service operator, or clerical sorter (T. 33).

The ALJ further concluded that as of April 24, 1999, if limitations attributed to substance abuse are discounted, plaintiff could have performed his past work as a

bartender or real estate agent, and that plaintiff has the residual functional capacity to perform the full range of light work (T. 32). Accordingly, the ALJ concluded that plaintiff was not disabled for purposes of the Social Security Act at any time since the alleged onset of his disability (T. 33).

The Commissioner contends that the ALJ's finding are supported by substantial evidence. Plaintiff contends that the ALJ's findings are not supported by substantial evidence because the ALJ failed to consider the impact of plaintiff's fatigue in determining his residual functional capacity, and failed to properly assess plaintiff's subjective complaints regarding his fatigue.

## III.  Medical Evidence

Plaintiff was hospitalized in April 1994 for alcohol and cocaine abuse (T. 206-12). He completed detoxification treatment and was discharged on May 3, 1994 (T. 209). He was again treated for alcohol and cocaine abuse in September 1994 (T. 238-43). Upon his discharge on September 20, 1994, plaintiff was diagnosed with alcohol, crack cocaine, and nicotine dependence, thrombocytopenia, hepatitis C, elevated liver function tests, and poor nutrition (T. 238).

Plaintiff began treating with Dr. Jeffrey Mahl in September 1994. Dr. Mahl advised plaintiff against using alcohol and stated that plaintiff's test results were consistent with alcohol-induced liver injury (T. 248-49). In December 1994, Dr. Mahl note that plaintiff's liver function improved with decreased alcohol consumption, but would never return to normal (T. 245).

In July 1995, plaintiff reported continued use of alcohol and cocaine, appeared depressed, and complained of fatigue. He was evaluated by a consulting psychologist, who diagnosed polysubstance abuse and dysthymic disorder (T. 280).

Plaintiff saw Dr. Donald Jacob in August 1995. He complained of fatigue and frequent dizzy spells after physical exertion (T. 282). Dr. Jacob noted that while plaintiff was concerned about his hepatitis C and low platelet count, plaintiff's primary problem was substance abuse (T. 284).

Plaintiff saw Dr. Mahl on November 1, 1995. Physical examination revealed stigmata of chronic liver disease. Plaintiff was drinking heavily and using drugs, and Dr. Mahl stated that plaintiff did not appear interested in a rehabilitation program (T. 365).

In a report dated August 13, 1996, Dr. Mahl assessed plaintiff's ability to perform work-related activities, and stated that plaintiff's impairments did not affect his capacity to lift, carry, stand, walk, or sit (T. 341). He also stated that plaintiff could frequently climb, balance, stoop, crouch, kneel, and crawl (T. 342). Plaintiff had participated in a detoxification program and had been drug- and alcohol-free for three weeks. Dr. Mahl noted that plaintiff's outlook on life had improved and he looked healthier (T. 364).

In a report dated June 6, 1996, Dr. Deborah Farolino, a treating physician, assessed plaintiff's ability to perform work-related activities. Dr. Farolino stated that plaintiff should avoid heavy lifting, but that his capacity to stand, walk, and sit was not limited (T. 297).

In August 1996, plaintiff saw Dr. Mahl and again complained of fatigue (T. 363). In November 1996, Dr. Mahl noted that plaintiff looked well but complained of fatigue and malaise (T. 362). In November 1996, plaintiff was hospitalized for drug and alcohol

detoxification (T. 502-31).  On April 10, 1997, plaintiff was again hospitalized for drug and alcohol dependency (T. 445-51).  In May 1997, Dr. Mahl noted that plaintiff's liver showed mildly depressed albumin and elevated bilirubin levels (T. 358).

In March 1998, plaintiff saw Dr. James Corasanti.  Plaintiff reported being drug- and alcohol-free (T. 435).   Dr. Corasanti concluded that plaintiff suffered from mildly decompensated cirrhosis which was likely due to hepatitis C and alcohol (T. 436).

In October 1998, Dr. Corasanti reported that plaintiff was doing well, and his biochemical profile and platelet count had improved (T. 438).  Plaintiff was also receiving weekly rehabilitation treatment for drug and alcohol dependency (T. 356).  Dr. Corasanti stated that plaintiff had end-stage liver disease and was totally and permanently disabled (T. 356).

By letter dated April 16, 1999, Dr. Mahl stated that he was unable to say whether plaintiff was significantly impaired by his liver disease (T. 499).  On April 19, 1999, Dr. Corasanti reported that plaintiff had been evaluated and listed for a liver transplant (T. 645). Dr. Keith Felstead, another of plaintiff's treating physicians, submitted a report dated April 29, 1999. Dr. Felstead assessed plaintiff's capacity to perform work-related activities, and found that plaintiff's capacity to lift, carry, sit, stand, and walk was not affected by his impairments (T. 548, 550).  Dr. Felstead also noted that plaintiff could continuously push, pull, and reach, but must avoid heights, moving machinery, chemicals, noise, humidity, dust, temperature extremes, and fumes (T. 551).

## IV. Drug Addiction and Alcoholism as Material Contributing Factors

The regulations require that if there is medical evidence of "drug addiction or alcoholism, we must determine whether [claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). If drug addiction or alcoholism is a material factor, the claimant will not be considered disabled. 20 C.F.R. §§ 404.1535, 416.935. The Commissioner must determine whether, if the claimant stopped using drugs or alcohol, any of the claimant's remaining limitations would be disabling. If it is determined that the remaining limitations would not be disabling, the claimant's drug addiction or alcoholism will be found to be contributing factors. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b). When the record shows substance abuse, it is the claimant's burden to prove that substance abuse is not a contributing factor material to the disability determination. *Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 273 (W.D.N.Y. 2005) (citing *Eltayyeb v. Barnhart*, 2003 WL 22888801, *4 (S.D.N.Y. Dec. 8, 2003)).

In this case, plaintiff's medical records show that he continuously abused drugs and alcohol until approximately December 1998, after which the evidence indicates plaintiff was drug- and alcohol-free through the date of the last hearing, August 23, 1999 (T. 64, 97, 296, 366, 365, 359, 402, 445-51, 616, 670).

In considering whether plaintiff's drug and alcohol addiction were material factors, the ALJ relied on the reports of plaintiff's physicians stating that his liver condition was worsened by his continued alcohol abuse. Dr. Thomas Mahl examined the plaintiff when his liver cirrhosis was first recognized and diagnosed. Dr. Mahl stated in his report that laboratory results indicated that plaintiff's liver injury was "alcohol induced," and that while

9

hepatitis C is generally a benign condition, "the addition of alcohol abuse to hepatitis C infection increases the degree of liver injury" (T. 249). Dr. Mahl stated in his November 1, 1995 report that plaintiff complained of fatigue, and his "major problem is continuous and ongoing poly-substance abuse" and is the cause of most of his symptoms (T. 366). Dr. Jacob examined plaintiff in August 1995 and also concluded that his "alcohol use alone [was] sufficient to explain his liver problems" and that the plaintiff's "primary problem is his substance dependency" (T. 284).

The ALJ also relied on physician reports indicating that plaintiff's condition had improved at times when he was abstaining from drugs and alcohol. In a report of April 30, 1996, Dr. Mahl noted that after three weeks of sobriety, plaintiff "looks more healthy and less depressed" and "offers no complaints" (T. 364). In his report of May 20, 1997, Dr. Mahl stated that plaintiff is "feeling very well" after completing a rehabilitation program (T. 358). In contrast, in reports from February 28 and April 1, 1997, Dr. Mahl that noted plaintiff "has not been doing particularly well" and "does not look right" (T. 360) and "has relapsed and is actively snorting Cocaine and drinking small amounts of alcohol" (T. 359).

The improvement of plaintiff's condition each time he abstained from substance abuse as well as the physicians' reports repeatedly noting alcohol as a factor aggravating plaintiff's liver problems support the ALJ's finding that drug addiction and alcoholism are material contributing factors in this case (T. 34). *See Talley v. Barnhart*, 2004 WL 2334135 (8th Cir. Oct. 18, 2004) (noting improvement of physical problems during times of abstinence from alcohol abuse as evidence supporting finding of substance abuse a material contributing factor). Accordingly, the ALJ properly determined that plaintiff is not disabled for purposes of the statute.

**V.     Impact of Plaintiff's Fatigue on his Residual Functional Capacity**

Plaintiff contends that the ALJ failed to consider the impact of his fatigue in determining his residual functional capacity. He argues that the ALJ incorrectly concluded that his fatigue was due to polysubstance abuse rather than hepatitis C and cirrhosis of the liver. Consequently, the ALJ determined that plaintiff's fatigue could not be considered in determining residual functional capacity because polysubstance abuse was a contributing material factor to fatigue. *See* 20 C.F.R. §§ 404.1535, 416.935.

Two physicians directly attributed plaintiff's fatigue to substance abuse. Dr. Mahl opined in a report dated July 19, 1995 that plaintiff's complaints of fatigue were most likely related to his drug use (T. 367) and on November 1, 1995 stated that plaintiff's major health problem is continuous and ongoing substance abuse, which is the cause of most of his symptoms (T. 366). Dr. Jacob, in a report dated August 7, 1995, stated that substance abuse is the plaintiff's primary problem, the reason he cannot hold a job, and the ultimate cause of all of his symptoms (T. 284).

Plaintiff's functional capacity was evaluated by several physicians, and these evaluations support the ALJ's findings that plaintiff had the residual functional capacity to perform sedentary work prior to April 24, 1999 and the ability to perform light work after April 24, 1999. The physicians who submitted evaluations were aware of plaintiff's complaints of fatigue, but the majority did not conclude that the fatigue impaired plaintiff's abilities.

Dr. Mahl submitted a report assessing plaintiff's abilities dated August 13, 1996, indicating that plaintiff's capacity to lift and carry, stand, walk, or sit were not affected by

his impairments (T. 341). In his report, Dr. Mahl also stated that plaintiff had no limitations on his abilities to climb, balance, stoop, crouch, kneel, or crawl, nor any limitations on his abilities to reach, push, or pull. However, Dr. Mahl noted that polysubstance abuse "may prevent employment" (T. 342). In a later short note dated November 26, 1996, Dr. Mahl stated that plaintiff suffers from chronic fatigue as a result of his liver condition, requiring him to take naps of four or more hours per day, and that plaintiff "could not be relied upon by any prospective employer to be a productive employee due to his fatigue" (T. 332). This note contradicts the more extensive report of three months earlier.

Plaintiff's last contact with Dr. Mahl was in April of 1999. Dr. Mahl stated that he had not seen the plaintiff since May 1997 and that in the past two years, plaintiff's "liver could have significantly improved or perhaps deteriorated" (T. 499). In describing plaintiff's condition, Dr. Mahl made no mention of fatigue.

Dr. R. Keith Felstead treated plaintiff every three to six months from April 7, 1997 until his last appointment in February 1999. Dr. Felstead submitted a report dated April 24, 1999 (T. 548-55) assessing plaintiff's ability to do work-related activities. Dr. Felstead stated that plaintiff's ability to lift or carry was not affected by his impairment (T. 548), nor was his ability to sit, stand, or walk (T. 550). He also stated that plaintiff was able to climb, stoop, or crouch continually and could balance, kneel, or crawl continuously (T. 550), as well as continuously reach, push, and pull (T. 551). The only restrictions noted by Dr. Felstead were that plaintiff must avoid heights, moving machinery, chemicals, noise, humidity, dust, temperature extremes, and fumes (T. 551). Dr. Felstead was aware of plaintiff's complaints of fatigue as noted in his treatment records (T. 406, 409), but he did

not note the impact, if any, of such known fatigue on plaintiff's abilities to do work-related activities.

Plaintiff also argues that the ALJ incorrectly accepted Dr. Felstead's assessment of the plaintiff over that of Dr. James G. Corasanti, a digestive health specialist who also treated plaintiff beginning in March 1998 (T. 648). Although Dr. Corasanti did not complete the functional assessment form mailed to him by the ALJ in April of 1999, he did complete a similar, though less extensive, one-page form on October 22, 1998, assessing plaintiff's exertional capabilities. On that form, Dr. Corasanti indicated that plaintiff was not capable of any form of work, *i.e.,* heavy, medium, light, or sedentary, and that plaintiff was "unemployable . . . at present" (T. 356). Dr. Corasanti did not indicate whether plaintiff's impairments were due to his liver disease or substance abuse.

The ALJ did not err in accepting Dr. Felstead's assessment over that of Dr. Corasanti. The regulations require consideration of the following factors when a treating source's opinion is not given controlling weight: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other relevant factors. 20 C.F.R. §§ 404.1527, 416.927. Dr. Felstead treated plaintiff for a longer period of time and examined plaintiff more frequently than Dr. Corasanti (T. 403-27; 428-39). Dr. Corasanti repeatedly submitted reports to Dr. Felstead, advising him of the outcome of tests performed (T. 429-39). Dr. Corasanti's area of specialization is digestive medicine, and the conflicting assessments are not more related to his area of speciality than to Dr. Felstead's. Dr. Corasanti's brief assessment on October 22, 1998 is not supported by diagnostic tests or laboratory findings to support his conclusion that plaintiff is unable to perform any level of work (T. 356), nor did Dr. Corasanti evaluate plaintiff's physical

13

abilities in any of his other reports (T. 428-39).  Thus, the ALJ did not err in failing to accord controlling weight to the specialist's opinion in this instance.  20 C.F.R. §§ 404.1527(d), 416.927(d).

Finally, Dr. Deborah Farolino, plaintiff's treating physician from August 1994 until November 1996, submitted a report assessing plaintiff's abilities dated June 6, 1996.  Dr. Farolino stated that plaintiff was unable to perform heavy lifting, but could lift five to ten pounds, and his abilities to stand, walk, and sit were not affected by his impairments (T. 297).   Dr. Farolino also stated that plaintiff could occasionally climb, balance, stoop, crouch, kneel, and crawl, and his abilities to reach, push, and pull were not impaired (T. 298).  Dr. Farolino further stated that plaintiff should not be exposed to heights or heavy machinery (T. 298).  Dr. Farolino did not note fatigue, but did note that plaintiff continued to abuse drugs. (T. 296).

The ALJ's conclusion that plaintiff's substance abuse was a material contributing factor to his fatigue is supported by substantial evidence in the record.  As limitations in which substance abuse is a material contributing factor should not be considered in determining disability, the ALJ did not err in declining to consider plaintiff's fatigue and in concluding that plaintiff was capable of performing sedentary work prior to April 24, 1999, and light work after April 24, 1999.

## VI.     Assessment of Plaintiffs' Subjective Complaints of Disabling Fatigue

Plaintiff argues that the ALJ did not properly consider his subjective complaints of fatigue.  Plaintiff alleges that he is unable to work because his medical condition causes fatigue which requires him to nap two to four times a day (T. 66, 95-97).  At the hearing on

August 23, 1999, vocational expert Alan Winship testified that an individual of an age, education, work experience, and limitations similar to the plaintiff who also experienced fatigue which made him sleepy during the day and frequently caused him to nap up to four hours per day would, in fact, not be capable of working (T. 104).

The regulations provide that the ALJ is required to consider the plaintiff's subjective complaints of pain and other symptoms, and these complaints are to be evaluated against the objective medical and other evidence. 20 C.F.R. §§ 404.1529(a), (c)(4); 416.929(a), (c)(4). The standard for evaluating pain and other symptoms requires that there be medical findings showing the existence of a medical impairment which could be reasonably expected to produce pain or other alleged symptoms. 42 U.S.C. § 423(d)(5)(A).

In this case, plaintiff's cirrhosis of the liver and hepatitis C could cause the symptoms of fatigue alleged by the plaintiff; however, the ALJ concluded that plaintiff's limitations due to fatigue were caused by his polysubstance abuse and therefore should not be taken into consideration in determining if the plaintiff is disabled (T. 21-22, 31). This conclusion is supported by the report of Dr. Mahl dated August 13, 1996, in which he assessed plaintiff's abilities and found that plaintiff's abilities to lift and carry, stand, walk, or sit were not affected by his impairments (T. 341), but that polysubstance abuse "may prevent employment" (T. 342). Dr. Mahl also reported on July 19, 1995 that he felt plaintiff's complaints of fatigue were most likely related to his drug use (T.367), and on November 1, 1995 that plaintiff's major health problem is continuous and ongoing substance abuse, and that it is the cause of most of his symptoms (T. 366). In his report of August 7, 1995 Dr. Jacob stated that substance abuse is the plaintiff's primary problem, the reason he cannot hold a job, and the ultimate cause of all of his symptoms (T. 284).

After careful review, I find that there is substantial evidence in the record which supports the ALJ's determination that plaintiff's substance abuse was a material contributing factor to his fatigue, and that his subjective complaints of fatigue should not be considered in determining disability.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for summary judgment on the pleadings (Item 6) is granted, and plaintiff's cross-motion (Item 7) is denied. The Clerk of the Court is directed to enter judgment in favor of the defendant.

So ordered.

                                              \s\ John T. Curtin
                                              JOHN T. CURTIN
                                              United States District Judge

Dated: September   1   , 2006
p:\opinions\04-376.aug1606